**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**NATHANIEL LEE DELOACH**                                                  **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:09cv288-HSO-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                             **DEFENDANT**

**REPORT AND RECOMMENDATION**

This cause comes before the Court on Plaintiff's "final plea" [24-1], liberally interpreted as Plaintiff's Motion to Reverse or Remand.[1] Defendant has filed a Response [25-1] in Opposition and a Memorandum [26-1] in Support of his Response, to which Plaintiff filed a Reply [27-1]. Having considered the Motion [24-1], Defendant's Response [25-1], the Memorandum in Support [26-1], the Plaintiff's Reply [27-1], the record of the proceedings below, along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [24-1] to Reverse or Remand should be denied.

**ADMINISTRATIVE PROCEEDINGS**

On October 17, 2005, Plaintiff filed a Title II application for a period of disability and disability insurance benefits.(Transcript of the Administrative Record, hereinafter "Tr.," 11, 85-90.) Plaintiff also filed a Title XVI application for supplemental security income on the same day. (Tr. 11, 91-93.) Plaintiff claimed he had been disabled since August 15, 2005. (Tr. 11.) Both the Title II and the Title XVI claims were denied on May 16, 2006. (Tr. 11, 51-58.) On August 17, 2006, Plaintiff requested a reconsideration of his applications. (Tr. 59.) On November 14, 2006, after reconsideration, Plaintiff's disability claims were denied. (Tr. 11, 60-63.) On January 11, 2007,

---

[1] Plaintiff is a pro se litigant.

Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 11, 64.) The hearing was conducted on September 11, 2008. (Tr. 11, 20-46.) On October 27, 2008, the ALJ found Plaintiff was not disabled under section 216(I), 223(d) and 161(a)(3)(A). (Tr. 11.) Review of the ALJ's decision was denied by the Appeals Council on March 6, 2009. (Tr. 1.)

## FACTS

Plaintiff was 52 years old at the time the ALJ denied his application for benefits. (Tr. 79.) Plaintiff has a graduate equivalency degree. (Tr. 109.) Plaintiff has worked as a dishwasher, material handler, landscape laborer, truck driver, janitor, and a machine operator. (Tr. 37-38, 111-118.) At the time of the hearing, Plaintiff also watched his nieces during the day for $320.00 a month and helped a friend with "remodeling" for $50.00 per Saturday. (Tr. 29-30.) Plaintiff is alleging disability since August 15, 2005. (Tr. 99, 104.)

On August 15, 2005, Plaintiff was admitted to Garden Park Medical Center after experiencing chest pain that got increasingly worse for the two hours prior to admission. (Tr. 156-157.) Plaintiff was seen by Joseph L. Faison, M.D. (Tr. 158.) Dr. Faison opined that the X-ray taken suggested that Plaintiff had congestive heart failure and hypertensive cardiovascular disease. (Tr. 158.) While Plaintiff was still in the hospital, more tests were conducted which also revealed that Plaintiff had mild congestive heart failure. (Tr. 172.)

On November 18, 2005, Plaintiff was admitted to Wellstar Cobb Hospital after experiencing sharp chest pains. (Tr. 192.) There a transesophageal echocardiogram and an electrical cardioversion were performed by David S. Caras, M.D. (Tr. 192.) Dr. Caras concluded that Plaintiff had concentric left ventricular hypertrohy, mild left atrial enlargement, and a dilated aortic root. (Tr. 195.) Upon discharge, Plaintiff was diagnosed with atrial fibrillation, atrial flutter, atypical chest pain, hypertension, and renal insufficiency. (Tr. 196.)

On April 22, 2006, Plaintiff was admitted to Gulfport Memorial Hospital because of shortness of breath, chest pressure, cold sweats, and dizziness. (Tr. 201.) Plaintiff was discharged on April 29, 2006. (Tr. 201.) Plaintiff was admitted to University of South Alabama Medical Center on June 21, 2006. (Tr. 223.) There, chest X-rays were taken which revealed pulmonary vascular congestion. (Tr. 240.) In the discharge summary, the attending physician noted that Plaintiff suffered a prior myocardial infarction in 2005 and that he was diagnosed with heart failure in April 2006. (Tr. 223.) Attending physician also noted "a history of a deep venous thrombosis with pulmonary thromboembolism." *Id.* Plaintiff was discharged in stable condition and a "good" prognosis. (Tr. 226.) On June 23, 2006, Plaintiff underwent a transesophageal echocardiogram. (Tr. 231.) G. Mustafa Awan, M.D. noted that Plaintiff's left atrium was slightly enlarged and that there was mild aortic sclerosis.(Tr. 231-232.)

Plaintiff was admitted to Gulfport Memorial Hospital on August 22, 2006 with complaints of "chest pain upon deep breaths" after "wrestling on jobsite." (Tr. 242.) Chest X-rays taken that same day revealed an enlarged heart and ectasia of the aorta. (Tr. 337.)

On December 24, 2007, Plaintiff was admitted to Gulfport Memorial Hospital because of a hernia. (Tr. 317.) Plaintiff claims that he first noticed the hernia in October 2005. (Tr. 325.) Upon evaluation in the emergency room, he was found to have an easily reducible umbilical hernia. *Id.* However, in the "Progress Note" dated August, 28, 2007, Daniel Jurusz, M.D., noted that the hernia is "extremely large." *Id.* In the same report, Dr. Jurusz noted that Plaintiff told him that "he has not taken any of his medications for a number of months" even though he was given a new prescription when he went to the emergency room a week prior. (Tr. 326.) Dr. Jurusz recommended repair of the umbilical hernia. *Id.*

On March 1, 2008, Plaintiff was again admitted to Gulfport Memorial Hospital. (Tr. 311.)

Plaintiff was en route to the emergency room due to abdominal pain caused by his hernia when he began to have chest pains. *Id.* On March 11, 2008, Plaintiff underwent surgery to repair an incarcerated umbilical hernia. (Tr. 283.) In the discharge summary, Mohammed Awaad, M.D. noted that Plaintiff "has been doing well," and that he has had "no chest pain or shortness of breath." (Tr. 281.)

Plaintiff had a follow up visit at Coastal Family Health Center on June 23, 2008. (Tr. 274-280.) The attending physician noted that Plaintiff's breathing was "effortless and normal." (Tr. 275.) It was also noted that Plaintiff's heart rate was normal and rhythm was regular. *Id.* The same observations were made in reference to Plaintiff's heart rate and rhythm on July 8, August 7, and September 8, 2008. (Tr. 260-270.)

Four friends and family members made statements in letter form regarding Plaintiff's condition. (Tr. 149-152.) Jackie Payne wrote that there were noticeable reactions the Plaintiff had in response to taking his medications. Payne stated that Plaintiff would be "dosing off a lot, tired all the time, [and] forgetting simple things." (Tr. 149.) Plaintiff's sister, Diana Floyd, wrote that the medication drained Plaintiff of his energy and strength. She noted one particular incident in which Plaintiff appeared confused and disoriented. (Tr.150.) Carl Gates noted that Plaintiff's hands tremble and that he is physically unsteady. (Tr. 151.) Adrienne Reese wrote that after Plaintiff takes his medications he is drowsy, has slow motor skills, and is driven into "prolong[ed] sleeping periods." (Tr. 152.)

On September 29, 2006, in an exertional activities questionnaire, Plaintiff stated that the medication he takes causes him to become "sleepy" and "disoriented." (Tr. 133.) Plaintiff also reported that the can only lift between 50 and 60 pounds, and he can not climb a flight of stairs without needing "5 to 8 min[utes] to recover." *Id.*

On November 9, 2006 a physical RFC Assessment was conducted by Glenn James, M.D. (Tr. 250-257.) Dr. James noted that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently. (Tr. 251.) Dr. James also noted that Plaintiff could walk or stand six hours during an eight hour work day and could sit for six hours during an eight hour work day. *Id.* Plaintiff was also deemed as capable of pushing or pulling objects that weighed less than the restricted weight an unlimited amount of time. *Id.* Plaintiff was not observed to have any postural, manipulative, visual, communicative, or environmental limitations. (Tr. 252-254.)

On November 14, 2006, a vocational analysis worksheet was completed on Plaintiff by examiner Bethany Sanders. (Tr. 136-138.) Plaintiff's residual functional capacity ("RFC") was marked as "light." (Tr. 136.) Plaintiff was deemed capable of lifting a maximum of twenty pounds and could lift ten pounds frequently. *Id.* Plaintiff was also assessed as capable of standing for six hours a day and sitting six hours a day. *Id.* Examiner noted that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. *Id.*

## STANDARD OF REVIEW

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there

is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## **ANALYSIS**

The evaluation process for determining whether an individual is disabled is outlined in 20 CFR § 404.1520(a) and 416.920(a). This process involves a five-step sequential analysis. First, it must be determined if the individual is engaged in substantial gainful activity (SGA). 20 CFR § 404.1520(b) and 416.920(b). If an individual engages in SGA, that person is not disabled no matter the severity of his or her physical and mental impairments. However, if the individual does not engage in SGA, the evaluation proceeds to step two, at which point a determination is made as to whether the individual has a medically determinable impairment or a combination of impairments that is "severe."  20 CFR § 404.1520(c) and 416.920(c). An individual's impairment will be deemed "severe" if that impairment significantly limits that individual's ability to perform basic work activities. A determination that the individual's impairment is less than severe will end the evaluation, but a finding that his or her impairment is severe calls for further evaluation under the third step. In the third step, the ALJ must determine if the claimant's impairment or combination of impairments meets the criteria stated in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.909. If the claimant's impairments meet the requirements listed, that individual shall be deemed disabled. If the claimant is determined to not meet those criteria, the ALJ must continue the evaluation under step four. Prior to step four, the ALJ must determine the claimant's residual

functional capacity. 20 CFR § 404.1520(e) and 416.920(e). This is determined by the individual's ability to do sustained physical and mental work despite any restrictions his impairments may cause. 20 CFR § 404.1520(e) and 416.920(e). At step four, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 CFR § 404.1520(f) and 416.920(f). Past relevant work includes work previously performed by the claimant, or work generally performed in the national economy, in the last 15 years or 15 years prior to when disability must be established. 20 CFR § 404.1560(b). A failure to demonstrate the required residual functional capacity will cause an evaluation under the final step of the analysis. At the fifth step, the ALJ must determine whether the claimant is capable of performing any work considering his or her residual functional capacity, age, education, and work experience. 20 CFR § 404.1520(g) and 416.920(g). If the claimant can perform any work considered, he or she is determined not to be disabled, while a finding that the claimant is incapable of performing the considered work will result in the conclusion that the individual is disabled. 20 CFR § 404.1520(g) and 416.920(g).

At the first step of the analysis, the ALJ found that the Plaintiff had not engaged in SGA since August, 15, 2005. (Tr. 13.) The ALJ noted that Plaintiff worked for a family member and a friend after August, 15, 2005, but this work did not amount to SGA. *Id.* At step two, the ALJ determined that Plaintiff had chronic congestive heart failure, a severe impairment. *Id.* The ALJ also noted that although Plaintiff had been "treated for gout, diabetes, and hypertension, there is no evidence that shows any resulting significant limitations due to these impairments" and therefore would not affect his ability to work. (Tr. 14.) The ALJ then found at step three that Plaintiff did not have an impairment or combination of impairments that met the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1525, 404.1526,

416.925 and 416.926. (Tr. 14.) The ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but excluded any work performed at a production rate pace. *Id.* At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work. (Tr. 16.) At the fifth step, the ALJ found that there were a significant number of jobs in the national economy available that Plaintiff could perform. *Id.* For these reasons, the ALJ concluded that Plaintiff was not disabled. (Tr. 17.)

As Plaintiff failed to cite any rule or reason to find the ALJ's determination in error, the Court accepts the Defendant's liberal reading of Plaintiff's "final plea" [24-1] as a motion to reverse or remand under this Court's Standing Local Order for Social Security Cases. (Def.'s Res. [25-1] 1.) Plaintiff's position can be construed as questioning whether the Commissioner's finding that Plaintiff remained able to perform a significant number of light jobs was supported by substantial evidence and legally correct.

The evidence considered in the decision issued on October 27, 2008, demonstrated that the ALJ's determination that Plaintiff could perform light work was supported by substantial evidence. The ALJ noted that in coming to her conclusion, she considered both medical and opinion evidence. (Tr. 14.)

The ALJ considered that Plaintiff claimed his medications made him drowsy. *Id.* However, Plaintiff failed to bring this point up at the hearing and when asked why he could not work by the ALJ, Plaintiff stated, "I don't feel that I can't work." (Tr. 35.) Plaintiff claimed that he was not hired anywhere he applied because employers and their insurers were unwilling to "take the risk" on someone with his "condition." (Tr. 36.) This issue is not to be considered in a disability determination. 20 C.F.R. § 404.1566(c). If it is determined that a claimant is able to work but "the hiring practices of employers" prevent the claimant from becoming employed, that

claimant is still considered not disabled. *Id.*

The ALJ deemed Plaintiff's "statements concerning the intensity, persistence and limiting effects" of Plaintiff's condition "not credible to the extent they are inconsistent" with the RFC assessment. (Tr. 15.) The ALJ concluded that the RFC assessment allowing for Plaintiff to perform light work except for work performed at a production rate pace was supported by the evidence which shows that Plaintiff has congestive heart failure. *Id.* However, the condition does not prevent him from working if he follows the prescribed treatment and does not perform work which is beyond his RFC. *Id.* The RFC assessment is supported by the fact that Plaintiff watches five children during the week and performs physical labor on Saturdays. (Tr. 28-30.)

The ALJ properly posed the hypothetical question about available positions to the vocational expert at the hearing (as it included all disabilities and limitations the ALJ deemed the Plaintiff to have). *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  The vocational expert indicated that Plaintiff would be able to perform both light and sedentary work. (Tr. 39.) Upon the request of the ALJ, the vocational expert only listed examples of jobs which were considered light work. (Tr. 39-40.) When considering the inability of the Plaintiff to work at a production rate pace, the vocational expert named two jobs that existed in significant numbers regionally and nationally, but also said that there were other possible positions that Plaintiff could hold. (Tr. 39-40.) Considering the jobs listed and the fact that Plaintiff could also perform sedentary work, there was substantial evidence to justify the decision of the ALJ finding that there was available positions in significant numbers that the Plaintiff could perform.

## **RECOMMENDATION**

The Court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter and

that the decision is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner is supported by substantial evidence and should be affirmed. Thus, the Court recommends that Plaintiff's Motion [24-1] to Remand or Reverse be denied.

In accordance with the Rules of this Court, any party within fourteen days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the 22nd day of July, 2011.

s/ John M. Roper, Sr.
CHIEF UNITED STATES MAGISTRATE JUDGE